UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BEAU M.,

                          Plaintiff,

v.                                                          8:18-CV-1170 (ATB)

COMM'R OF SOC. SEC.,

                          Defendant.
_____

APPEARANCES:                              OF COUNSEL:

SCHNEIDER & PALCSIK                      MARK A. SCHNEIDER, ESQ.
Counsel for Plaintiff
57 Court Street
Plattsburgh, NY 12901

U.S. SOCIAL SECURITY ADMIN.             EMILY M. FISHMAN, ESQ.
OFFICE OF REG'L GEN. COUNSEL
REGION II
Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

ANDREW T. BAXTER, United States Magistrate Judge

**<u>DECISION and ORDER</u>**

        Currently before the Court, is this Social Security action filed by Beau M. ("Plaintiff")

against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to

42 U.S.C. § 405(g).  This matter was referred to me, for all proceedings and entry of a final

judgment, pursuant to N.D.N.Y. General Order No. 18, and in accordance with the provisions

of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the

parties. (Dkt. Nos. 4, 5).  The parties have filed briefs (Dkt. Nos. 13, 17, 20) addressing the

administrative record of the proceedings before the Commissioner (Dkt. No. 10).[1]

## I.      RELEVANT BACKGROUND

### A.      Factual Background

Plaintiff was born in 1979, making him 33 years old as of the alleged onset date and 38

years old on the date of the ALJ's decision.  At the initial level, Plaintiff alleged disability due

to arthritis in his back, nerve root compression at L5, a disc extrusion, and Vitamin D

deficiency.[2]  Plaintiff reported graduating from high school and had past work as a hand

packager/injection molding machine tender, leaving his last employer on April 1, 2013.  (T. 38,

159.)  Plaintiff became a stay-at-home Dad with primary responsibility for his two pre-school-

aged children, and also helped care for his mother and stepfather, who were disabled.  (T. 38-

38, 51-53, 166-67, 459.)

### B.      Procedural History

Plaintiff applied for disability insurance benefits on April 10, 2015, alleging disability

beginning on April 1, 2013.  Plaintiff's application was initially denied on August 26, 2015,

after which he timely requested a hearing before an Administrative Law Judge ("ALJ").

Plaintiff appeared at a hearing before ALJ Andrew J. Soltes, Jr., on June 16, 2017, at which a

vocational expert ("VE") also testified.  (T. 29-67.)  On October 27, 2017, the ALJ issued a

written decision finding that Plaintiff was not disabled under the Social Security Act.  (T. 7-

---

[1] The Administrative Transcript is found at Dkt. No. 10.  Citations to the Administrative
Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein
will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing
system.

[2] By August 21, 2015, when he underwent an internal medical examination, Plaintiff was also
complaining of anxiety, depression, and insomnia.  (T. 344.)

23.)  On September 25, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)

### C.    The ALJ's Decision

In his decision (T. 12-19), the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2017.  (T. 12.)  The ALJ determined that Plaintiff did not engage in substantial gainful activity from his alleged onset date of April 1, 2013, through his date last insured of June 30, 2017.  (*Id.*)  The ALJ concluded that Plaintiff had severe impairments including degenerative disc disease of the lumbar spine, lumbar radiculopathy, anxiety, depression, and insomnia through the date last insured.  (T. 13.)  The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, through the date last insured.  (T. 13.)  Specifically, the ALJ considered Listings 1.04 (disorders of the spine), 12.04 (depressive, bipolar and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders).  (*Id.*)

The ALJ found that Plaintiff had the RFC to perform light work,

> except he can use his lower extremities to frequently operate bilateral foot controls, can perform no work using ladders, ropes, or scaffolds, and no work from unprotected heights.  He is limited to a low-stress work environment defined as one with simple routine tasks; can have rare changes in the workplace setting; can make basic work-related decisions; can have frequent interaction with the public, co-workers, and supervisors; he may be off-task five percent of an eight-hour workday.

(T. 14.)  Relying upon testimony from a vocational expert, he ALJ determined that Plaintiff was unable to perform any past relevant work through the date last insured, but that there were jobs existing in significant numbers in the national economy that Plaintiff could perform.[3]  (T. 17-19.)  The ALJ therefore found that Plaintiff was not disabled at any time from April 1, 2013, the alleged onset date, through June 30, 2017, the date last insured.  (T. 19.)

**D.      Issues in Contention**

In his brief, Plaintiff contends that he was unable to perform any work because of his combination of a severe spinal disorder, anxiety, depression, and panic disorder.  (Dkt. No. 13, at 14-32.)  Specifically, Plaintiff argues that his spinal impairments equal Listing 1.04 and his mental health condition meets or equals Listings 12.04 and 12.06, and that he did not have the RFC to perform even sedentary work.  (*Id*. at 15-21.)  Plaintiff maintains that the ALJ did not accurately assess Plaintiff's mental limitations and did not have a consultative psychological report to support his RFC findings, having failed to order one.  (*Id*. at 21, 28-32.)  Plaintiff contends that the ALJ erred by giving more weight to the consultative examiner Nader Wassef, M.D., than to the findings and opinions of Plaintiff's treating sources, including neurosurgeon Joseph Arguelles, M.D., and providers at Champlain Spine and Pain Management.  (*Id*. at 21-25.)  Plaintiff also argues that the ALJ erred in not crediting Plaintiff's testimony about his limitations.  (*Id*. at 25-28.)

In his brief, Defendant argues that substantial evidence supports the ALJ's finding that Plaintiff's impairments did not meet or equal a Listing.  (Dkt. No. 17, at 7-13.)  Defendant also

---

[3] In response to alternative hypotheticals posed by the ALJ, the VE identified additional jobs in the national economy that someone with Plaintiff's limitations could perform at the sedentary level, even with a sit-stand option every 30 minutes.  (T. 63-65).

maintains that the ALJ's RFC finding is supported by substantial evidence, and that he gave proper weight to Dr. Wassef's consultative opinion. (*Id*. at 13-20.) Defendant contends that the ALJ's mental RFC finding is also supported by substantial evidence, and that the ALJ was not required to order a consultative psychological examination. (*Id*. at 20-22.) Finally, Defendant argues that the ALJ properly considered Plaintiff's symptoms. (*Id*. at 22-26.)

On reply, Plaintiff argues that Defendant urges the Court to apply an incorrect standard of review. (Dkt. No. 20, at 1-4.) Plaintiff also reiterates his arguments that he met or equaled Listings 1.04, 12.04, and 12.06. (*Id*. at 4.)

## II.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See, e.g., Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian*, 708 F.3d at 417 (*citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971)). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.      Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is

6

> unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III.   ANALYSIS

### A.   The ALJ Properly Considered Plaintiff's Impairments and Reasonably Found That Plaintiff Does Not Meet or Medically Equal a Listing

#### 1.   Applicable Law

"Plaintiff has the burden of proof at step three to show that her impairments meet or medically equal a Listing." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009) (citing *Naegele v. Barnhart*, 433 F. Supp. 2d 319, 324 (W.D.N.Y. 2006)). "To meet a Listing, Plaintiff must show that her medically determinable impairment satisfies all of the specified criteria in a Listing." *Rockwood*, 614 F. Supp. 2d at 272 (citing 20 C.F.R. § 404.1525(d)). "If a claimant's impairment 'manifests only some of those criteria, no matter how severely,' such impairment does not qualify." *Rockwood*, 614 F. Supp. 2d at 272 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). Additionally, a court may be able to uphold an ALJ's finding that a claimant does not meet a Listing even where the decision lacks an express rationale for that finding if the determination is supported by substantial evidence. *Rockwood*, 614 F. Supp. 2d at 273 (citing *Berry*, 675 F.2d at 468).

#### 2.   Analysis

The ALJ found that Plaintiff's severe impairments included degenerative disc disease of the lumbar spine, lumbar radiculopathy, anxiety, depression, and insomnia. (T. 13.)

Plaintiff argues that his spinal impairments equal Listing 1.04, and that his mental health condition meets or equals Listings 12.04 and 12.06. (Dkt. No. 13, at 15-21.) The Court finds that the Plaintiff did not satisfy his burden of establishing that his impairments meet or equal any listing.

The ALJ clearly considered Listing 1.04 and concluded that the evidence did not show "a spine disorder resulting in compromise of a nerve root with evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in ps[eu]doclaudication." (T. 13.) As Defendant points out, the record indicates that, during the consultative examination with Dr. Wassef, Plaintiff displayed a full range of motion, negative straight leg raise tests, no muscle atrophy, and no sensory, motor or reflex deficits. (Dkt. No. 17, at 9; 345-46.) Dr. Wassef diagnosed discogenic lumbar pain and lumbar radiculopathy and opined that Plaintiff was mild-to-moderately limited in regard to standing, walking, climbing and descending stairs, bending, squatting, lifting, and operating foot controls. The consultative examiner did not indicate that Plaintiff's impairments were of a listing-level severity. (T. 347.) Although Plaintiff argues that his back impairments equal Listing 1.04 because he has a documented nerve root impingement, exertional limitations, sensory and reflex loss, loss of strength, and a positive straight leg raise, the record provides substantial evidence supporting the ALJ's contrary findings. (Dkt. No. 13, at 15-21.)

A January 2015 MRI showed an L5-S1 disc protrusion contacting both S1 nerve roots with no central or neuroforaminal stenosis. (T. 351-52, 405-06.) A later MRI in February 2016 indicated degenerative disc disease at L5-S1 with some evidence of lateral recess compromise with potential compression of the right S1 root. (T. 397.) Treatment records document that Plaintiff declined or discontinued injections, physical therapy, and chiropractic

treatment, with plans to continue walking and stretching for ambulation, and with hydrocodone providing 90 percent relief of his pain. (T. 414.) As Defendant argues, it is noted in the record that Plaintiff uses no assistive devices (Dkt. No. 17, at 8-9; T. 54, 345, 359, 415) and Plaintiff testified that he stopped using a prescribed back brace. (T. 46-47). Based on this record, Plaintiff has not established that he meets or medically equals the requirements of Listing 1.04.

The ALJ's analysis of Plaintiff's mental impairments is also supported by the evidence and his citations to the record. (T. 13-17.) The ALJ stated that no state Agency psychological consultant concluded that a mental listing was medically equaled (T. 14), although it would have been more accurate to note that no report from such a consultant was obtained, presumably because Plaintiff claimed no mental impairments in his application for benefits. In evaluating Plaintiff's mental impairments (T. 13-14, 16-17), the ALJ considered Plaintiff's testimony and other statements; the only mental health records supplied by Plaintiff, on the eve of the administrative hearing (Ex. 8F, T. 458-85); observations about Plaintiff's daily activities and demeanor from providers who treated Plaintiff's physical impairments (Exs. 4F, 6F, T. 349-96, 413-24); and a report from a consultative physical examiner who discussed Plaintiff's activities of daily living and also performed a "mental status screen," while recommending a separate psychological evaluation, which the ALJ did not request (Ex. 3F, T. 347).[4]

The ALJ found that Plaintiff has no more than mild limitation in understanding, remembering or applying information; moderate limitation at most in interacting with others and concentrating, persisting or maintaining pace; and a moderate limitation in adapting and managing oneself. (T. 13-14.) In support of these findings, the ALJ noted Plaintiff's lack of

_____

[4] The Court will discuss below Plaintiff's argument that the ALJ erred in evaluating Plaintiff's mental health impairments without the benefit of any opinion evidence from mental health specialists.

any significant memory impairment, as well as daily activities indicating that he is able to follow and remember instructions and directions, make decisions and judgments, organize information, and understand, remember, and apply information for the performance of normal daily activities.  (T. 13-14, 166-83, 228-48, 344-96, 413-24, 458-85.)  The ALJ therefore concluded that Plaintiff's mental impairments did not cause at least two marked limitations or one extreme limitation, and that the paragraph B criteria of Listings 12.04 and 12.06 were not satisfied.  (T. 14.)  The ALJ also found that the evidence failed to establish the presence of the paragraph C criteria.  (*Id*.)  The Court's review of the record, including Plaintiff's testimony and his reported activities of daily living, supports the ALJ's findings that Plaintiff's mental impairments do not meet or equal listing-level severity.

For the reasons above, the Court finds that the ALJ properly considered Plaintiff's impairments in conjunction with the Listings and reasonably concluded that his impairments did not meet or medically equal a listing singly or in combination.  The ALJ's findings are supported by substantial evidence and remand is therefore not required on these bases.

**B.    The ALJ's Analysis of the Opinion Evidence and RFC Determination are Supported by Substantial Evidence**

### 1.    Applicable Law

#### a.   RFC

RFC is "what [the] individual can still do despite his or her limitations.  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ."   A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, 11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville*

*v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. § 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions that a plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta*, 737 F. Supp. at 183; *Sullivan v. Sec'y of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, 09-CV-1120 (DNH/GHL), 2010 WL 3825629, *6 (N.D.N.Y. Aug. 17, 2010) (citing SSR 96-8p, 1996 WL 374184, at *7).

### b. Consideration of Opinion Evidence

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 404.1527(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, " . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record,

11

such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

In deciding how much weight to afford the opinion of a treating physician, the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek*, 802 F.3d at 375 (quoting *Selian*, 708 F.3d at 418). However, where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the "substance of the treating physician rule was not traversed," no "slavish recitation of each and every factor" of 20 C.F.R. § 404.1527(c) is required. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran,* 362 F.3d at 31-32). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6).

### 2. Dr. Wassef's Consultative Opinion

In August 2015, Plaintiff underwent a consultative internal medicine examination conducted by Dr. Wassef. Plaintiff appeared to be in no acute distress; he had normal gait and stance and could perform a full squat; he could walk on his heels and toes without difficulty; he used no assistive devices; he needed no help changing for the exam or getting on and off the exam table; and he was able to rise from a chair without difficulty. (T. 345.) Plaintiff had a full range of motion in the lumbar spine, negative straight leg raise testing bilaterally, diffuse tenderness in the lumbar spine area, physiologic and equal deep tendon reflexes in the upper and lower extremities, and full strength in the upper and lower extremities with no sensory

deficits noted. (T. 346.) Dr. Wassef diagnosed anxiety, insomnia, depression, discogenic lumbar pain, and lumbar radiculopathy. He opined that Plaintiff had mild-to-moderate limitations in walking, climbing and descending stairs, bending, squatting, lifting, and operating foot controls. (T. 347.) The ALJ afforded great weight to Dr. Wassef's opinion because it was "supported by his clinical findings and the treating source evidence[.]" (T. 17.)

### 3. Analysis

Plaintiff contends that he does not have the RFC to perform even sedentary work and that the ALJ erred by giving more weight to Dr. Wassef's opinion than to the findings and opinions of Plaintiff's treating sources, including Dr. Arguelles. (Dkt. No. 13, at 14-32.) The Court finds these arguments unpersuasive for the following reasons.

The ALJ was entitled to rely on the consultative opinion of Dr. Wassef in determining Plaintiff's RFC. (T. 14-17.) In assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining medical consultants because they are qualified experts in the field of social security disability. 20 C.F.R. § 404.1527(e); *see Frey ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Cobb v. Comm'r of Soc. Sec.*, No. 5:13-CV-0591 (LEK/TWD), 2014 WL 4437566, at *6 (N.D.N.Y. Sept. 9, 2014) ("[T]he report of a consultative examiner may constitute substantial evidence to support an ALJ's decision." (*quoting Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983)); *Heaman v. Berryhill*, 765 F. App'x 498, 500 (2d Cir. 2019) (rejecting plaintiff's argument that the ALJ's RFC determination was not supported by substantial evidence because the ALJ relied on the

opinions of the consultative examiner and the medical expert, which contradicted the opinions

of treating sources, but were otherwise supported by the record).

Contrary to Plaintiff's argument, the Court's review of the record does not indicate that

Dr. Arguelles or Plaintiff's pain management providers actually submitted a medical source

opinion. (T. 349-457; Dkt. No. 13, at 21-25.) As Defendant points out, Dr. Wassef's is the

only medical opinion in the record. (Dkt. No. 17, at 17.) Further, although Plaintiff highlights

a treatment note reflecting Dr. Arguelles' statement that Plaintiff would benefit from surgery,

that does not constitute an opinion on Plaintiff's vocational functioning. (Dkt. No. 13, at 12,

19-20, 24-25; T. 399.) Plaintiff fails to mention Dr. Arguelles' notes that Plaintiff had obtained

a prior medical opinion that surgery was not an option for his condition, and that Plaintiff

needed additional time before deciding whether to undergo surgery. (T. 399.)

Plaintiff has not established limitations beyond those included in the ALJ's RFC.

Moreover, the Court's review of the evidence does not support Plaintiff's argument that he

cannot perform even sedentary work, as the VE's testimony established. (Dkt. No. 13, at 15;

T. 63-65.) The ALJ's RFC analysis includes a detailed consideration of the evidence including

Plaintiff's symptoms, function reports, daily activities (including childcare and household

chores), and treatment records, as well as Dr. Wassef's consultative opinion. That information

constitutes substantial evidence supporting the RFC determination for a modified range of light

work. (T. 14-17; Dkt. No. 17, at 14-16.)[5] *See, e.g., Nelson v. Colvin*, 12-cv-1810 (JS), 2014

WL 1342964, at *12 (E.D.N.Y. Mar. 31, 2014) (RFC for light work was supported by

---

[5] As discussed further in Section III.D. of this Decision and Order, the ALJ properly considered
and accounted for Plaintiff's mental limitations in the RFC by limiting Plaintiff to low-stress
work with simple routine tasks, rare changes, basic work-related decisions, frequent
interaction, and off-task time of five percent. (T. 14, 17.)

consultative examiner's assessment of mild to moderate limitations for sitting, standing, walking, bending, and lifting weight on a continued basis); *White v. Comm'r of Soc. Sec.*, No. 8:17-CV-109 (DJS), 2018 WL 2170288, at *8-9 (N.D.N.Y. May 10, 2018) (the moderate limitations as opined by Dr. Wassef are not inconsistent with an RFC for light work) (collecting cases), *aff'd* 753 F. App'x 80, 82 (2d Cir. 2019) (affirming the district court in rejecting plaintiff's argument that the ALJ could not properly have inferred that White was able to perform light work "on a full-time sustained basis" from Dr. Nader Wassef's opinion that White had "moderate limitations" in standing, sitting, and performing other activities, particularly in light of corroborating evidence including White's daily activities); *Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017) (affirming an ALJ's decision not to give controlling weight to the more restrictive opinion of a treating physician based on the opinion of a consultative examiner that plaintiff could perform sedentary work with additional limitations, and the evidence that plaintiff was capable of various activities of daily living, including childcare); *Herrington v. Berryhill*, No. 3:18-CV-315, 2019 WL 1091385, at *7 (D. Conn. Mar. 8, 2019) (activities of daily living, including childcare, are an appropriate factor for an ALJ to consider when assessing claimant's claimed symptoms and limitations) (collecting cases).

For the reasons above, the Court finds the ALJ's consideration of the opinion evidence and Plaintiff's RFC are supported by substantial evidence. Remand is therefore not required on these bases.

**C.     The ALJ Properly Evaluated Plaintiff's Symptoms**

**1.   Applicable Law--Evaluation of Symptoms**

In evaluating a claimant's RFC for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). The ALJ must "'carefully consider'" all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'" *Del Carmen Fernandez v. Berryhill*, 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); SSR 16-3p)).

SSR 16-3p provides that the evaluation of symptoms involves a two-step process.[6] 2017 WL 5180304, at *2. The Social Security Administration ("SSA") "will first consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms." *Id*. at *3. "[O]nce an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [SSA will then] evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . ." *Id*. If SSA cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, it will "carefully

---

[6] The Court notes that the standard for evaluating subjective symptoms has not changed in the regulations. Rather, use of the term "credibility" has been eliminated and SSR 16-3p makes it clear that the subjective symptom evaluation is not an evaluation of the claimant's character. 2017 WL 5180304. SSR 16-3p is applicable on March 28, 2016, pre-dating the ALJ's October 2017 decision. *Id*.

consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms." *Id*. at *6.

In evaluating the intensity, persistence, and limiting effects of an individual's symptoms, factors to be considered include: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. § 416.929(c)(3); SSR 16-3p, 2017 WL 5180304, at *7-8.

### 2. Analysis

The ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record[.]" (T. 15.) The ALJ stated the evidence indicated that Plaintiff's course of treatment had been conservative and his symptoms had been adequately managed, allowing him to function and perform activities consistent with his RFC. (*Id*.) Plaintiff argues that the ALJ erred in not crediting Plaintiff's testimony about his limitations and by characterizing Plaintiff's treatment as conservative. (Dkt. No. 13, at 18, 25-28.) The Court is not persuaded by this argument for the following reasons.

The Court's review of the record supports the ALJ's finding that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with the evidence of record, which did not indicate that Plaintiff had "a disabling condition according to regulations." (T. 15.) The ALJ noted that Plaintiff's "conservative" treatment included

ibuprofen, applications of ice and heat, and stretching exercises. (T. 16, 349-96.) The ALJ's review also indicated Plaintiff repeatedly declined to engage in physical therapy, although it was recommended by his pain management providers, but was instead "treated with several injections and prescription medication, as well as use of a TENS unit and home exercises." (*Id.*) An April 2017 treatment note from Champlain Spine and Pain Management noted Plaintiff declined injections, physical therapy, and chiropractic treatment, but would continue walking and stretching for ambulation. It was also noted hydrocodone provided 90 percent relief of Plaintiff's pain and he was able to sleep and function better during the day. (T. 414.) Dr. Wassef's largely benign findings from his consultative examination and Plaintiff's reported daily activities also support the ALJ's RFC determination. (T. 16-17, 166-83, 344-48, 397-424.)

The ALJ acknowledged that Plaintiff suffered from "severe" lumbar radiculopathy, but based on his review of the evidence, did not find such evidence supported Plaintiff's statements of disabling severity. (T. 13, 15-17; Dkt. No. 13, at 28.) Contrary to Plaintiff's arguments, the ALJ provided multiple specific reasons for finding Plaintiff's statements inconsistent with the other evidence of record. (Dkt. No. 13, 25-28; T. 15-17.) The Court finds that the ALJ properly considered the evidence before him, and that substantial evidence supports his evaluation of Plaintiff's symptoms, making remand on this issue unwarranted. It is not the role of a court to "re-weigh evidence" because "a reviewing court 'defers to the Commissioner's resolution of conflicting evidence' where that resolution is supported by substantial evidence. *Lewis v. Colvin*, 122 F. Supp. 3d 1, 7 (N.D.N.Y. 2015) (noting that) (quoting *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

**D. The ALJ's Findings Were Based on a Properly Developed Record**

**1. Applicable Law**

It is well-settled that, because a hearing on disability benefits is a non-adversarial proceeding, the ALJ has an affirmative duty to develop the record, whether or not a plaintiff is represented. *Melville*, 198 F.3d at 51 (citing *Echevarria v. Sec'y of Health & Human Servs.*, 685, F.2d 751, 755 (2d Cir. 1982)). Despite the duty to develop the record, remand is not required where the record contains sufficient evidence from which the ALJ can assess a claimant's RFC. *Weed Covey v. Colvin*, 13-CV-6602, 2015 WL 1541864, at *13 (W.D.N.Y. Apr. 6, 2015) (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013)). "Where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n. 5 (2d Cir. 1999) (citing *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)).

**2. Analysis**

Plaintiff argues that the ALJ did not have a consultative psychological report to support his findings on Plaintiff's mental limitations and erroneously failed to order one. (Dkt. No 13, at 21, 28-32.) The Court finds that the ALJ had adequate evidence to address the issues relating to Plaintiff's mental health. Even if the ALJ erred in not seeking additional medical opinion evidence from a mental health specialist, any error was harmless.

"The ALJ has discretion on a case-by-case basis to determine whether a consultative examination is needed, and is only required to order such an examination where the examination is necessary to resolve a conflict or ambiguity in the record." *Phelps v. Colvin*, 20 F. Supp. 3d 392, 401 (W.D.N.Y. 2014) (citing 20 C.F.R. § 404.1519a(b)(4); *Simon v. Colvin*,

No. 6:12-CV-6381, 2013 WL 4094612, at *6-7 (W.D.N.Y. Aug. 13, 2013)). "Where a plaintiff suggests a possible mental impairment, the ALJ must assess whether there is any evidence of work-related functional limitations resulting from the possible mental impairment which have not been adequately addressed in the record." *Brown v. Astrue*, No. 11-CV-6392T, 2012 WL 2953213, at *7 (W.D.N.Y. July 19, 2012) (citing *Haskins v. Comm'r of Soc. Sec.*, No. 5:05-CV-292, 2008 WL 511378, at *7, n. 5 (N.D.N.Y. Nov. 25, 2008)).

As noted above, the Plaintiff did not allege any mental health diagnoses or limitations when he applied for benefits in April 2013, which presumably explains why an Agency psychological consultant did not do an initial mental health evaluation. In August 2013, Plaintiff was examined by Dr. Wassef, who the ALJ acknowledged was not a psychiatrist or psychologist. (T. 17, 344-48, 458-85.) Plaintiff told Dr. Wassef that he suffered from insomnia, depression, and anxiety, and that he dug and picked at his skin, which was corroborated by apparently self-induced lesions on Plaintiff's arms. (T. 344). Dr. Wassef's found that Plaintiff had appropriate dress, good eye contact, full orientation, and normal thought process, affect, memory and judgment, although the doctor also stated that Plaintiff could benefit from a psychological evaluation. (T. 17, 347.)

As the ALJ noted, Plaintiff later (in July 2016) began outpatient mental health therapy, the records of which were not transmitted to the ALJ until a few days before the administrative hearing. (T. 17, 458-88). Plaintiff complained of anxiety and panic attacks, and noted that, since childhood, he had problems with skin picking when he encounters stress. (T. 459.) He also reported difficulties in his marriage, grief over the loss of a previous partner, limited social ties, and poor self care. (T. 17, 477, 479, 481.) In April and May 2017, he reported deteriorating mental health and worsening skin picking and insomnia. (T. 469, 471.)

During the administrative hearing in June 2017, Plaintiff disclosed that he was taking buspirone and venlafaxine for anxiety and depression and that he smoked marijuana daily, which helped with the anxiety. (T. 47-50.) Plaintiff discussed his skin picking--which started becoming more severe in 2010 when he was still working[7]--and related insomnia as his "biggest thing." (T. 48-49.) He identified his therapy, as well as drawing and video games as activities that helped him cope. (T. 51, 475, 477.) Plaintiff testified that he spent "as much time with my kids as possible," "did not have problems getting along with neighbors, friends, [and] family," and considered himself "pretty personable," although he did not "go out and socialize much." (T. 50-51.) He stated that being in public or with even two or three people with whom he was not familiar made him anxious. (T. 55.) Plaintiff acknowledged extensive activities of daily living relating to child and home care, although these responsibilities sometimes exacerbated his symptoms. (T. 13, 16-17, 44, 52-53, 166-67, 475.)

In analyzing Plaintiff's mental health issues in various contexts, the ALJ considered the evidence of record, including Plaintiff's extensive daily activities, his testimony at the administrative hearing, his function reports, an internal medicine consultative examination by Dr. Wassef, and mental health treatment records dated July 2016 to May 2017. (T. 166-83, 344-48, 458-85.) As noted, the ALJ found that Plaintiff's anxiety, depression, and insomnia were severe impairments, but that they did not meet or equal a listing. In including specific mental limitations within Plaintiff's RFC (T. 13-14), the ALJ stated that he gave "maximum benefit of doubt to the claimant and finds that the evidence supports his ability to perform low-stress work." (T. 17.) The ALJ limited Plaintiff "to a low-stress work environment defined as

---

[7] Plaintiff testified that he left his last job because his lower back pain became intolerable. (T. 42-43.)

one with simple routine tasks; can have rare changes in the workplace setting; can make basic work-related decisions; can have frequent interaction with the public, co-workers, and supervisors; he may be off-task five percent of an eight-hour workday."[8] (T. 14, 17.)

While it might have been preferable for the ALJ to order a psychological evaluation or propound medical interrogatories to a mental health specialist, the Court finds that the evidence of record was sufficient for the ALJ to make findings regarding Plaintiff's mental impairments and related limitations. *See, e.g.*, *Cruz v. Shalala*, No. 94 CIV. 0929, 1995 WL 441967, at *4-5 (S.D.N.Y. July 26, 1995) (plaintiff raised a mental impairment for the first time at the administrative hearing and did not present sufficient evidence to raise a claim that required the ALJ to order a consultative examination); *Simon v. Colvin*, 2013 WL 4094612, at *7 (there was substantial evidence in the record to support the ALJ's conclusion to assess limitations resulting from Plaintiff's mental health issues, including notes from Plaintiff's mental health providers and from her therapy sessions; "the ALJ did not abuse his discretion in declining to order a renewed consultative psychological examination").[9] Even if the ALJ erred in not seeking additional mental health opinion evidence, the Court concludes that the ALJ adequately discussed the relevant evidence and adopted RFC limitations which reasonably took into account any potential mental health limitations identified in Plaintiff's testimony and the

---

[8] The VE testified that an average employer would tolerate an employee who was off task ten percent of the time or less. (T. 65.)

[9] *See also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8-9 (2d Cir. 2017) (even though the ALJ rejected the ultimate assessment of the plaintiff's treating mental health provider, the ALJ did not err by not seeking other medical opinion evidence to support the RFC findings, because there was sufficient evidence to support those findings, including that provider's contemporaneous treatment notes regarding plaintiff's mood, energy, affect, and other characteristics, including daily activities, that were relevant to her ability to perform sustained gainful activity).

mental health treatment records. Thus, any error in developing the record was harmless and remand is not required on this basis.

**ACCORDINGLY**, it is

**ORDERED** that the Commissioner's decision is **AFFIRMED**, and further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED,** and that judgment be entered for the **DEFENDANT.**

Dated: February 6, 2020

Andrew T. Baxter
U.S. Magistrate Judge